IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RANDALL GARTEISER,<br><br>Plaintiff,<br><br>v.<br><br>4 ASPEN CREEK CROSSING LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00723-RJS-DBP<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

This case arises out of a dispute about performance under a New Construction Real Estate Purchase Contract (REPC) for property in Park City, Utah. Plaintiff, Randall Garteiser, who was attempting to purchase the property, seeks specific performance of the REPC. He contends that he fully performed the contract and that 4 Aspen Creek Crossing, LLC (ACC), the Defendant and seller, breached.[1] ACC maintains that it was Garteiser who breached the REPC, and that it rightfully cancelled the contract as a result.

Pursuant to Utah Code Section 78B-6-1303, Garteiser has filed with the Summit County Recorder a lis pendens on the property at issue in this case, effectively preventing the sale of the property. The court now considers ACC's Motion to Remove Lis Pendens.[2] In its Motion, ACC asks the court to remove the lis pendens on the property and to award costs and fees related to the Motion. For the reasons discussed below, the court grants in part and denies in part ACC's

---

[1] *See* Dkt. 3; Dkt. 19.

[2] Dkt. 15.

Motion. The court concludes that Garteiser has failed to make the required showing to maintain the lis pendens, and thus orders its removal. The court declines, however, to grant ACC's request for costs and fees.

**BACKGROUND**

The Parties disagree about many of the facts underlying this dispute. As explained below, the court need not attempt to resolve any factual disputes in order to rule on ACC's Motion. For this reason, the court recounts below only those facts that are not in dispute and that bear on the court's analysis.

On December 27, 2014, Garteiser and ACC executed a REPC, under which Garteiser agreed to purchase property located at 2220 Aspen Creek Crossing Loop, Park City, Utah for $2,625,627.59.[3] As required by the REPC, Garteiser paid ACC both a $50,000 earnest money deposit and a $100,000 construction deposit. The present dispute focuses on performance under the REPC's settlement provision, Section 3.1. This provision states that

> Settlement shall take place no later than the Settlement Deadline referenced in Section 24(f), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing officer all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any Permanent Loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.[4]

The REPC also contained a time is of the essence provision, Section 22, which states

> Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the

[3] *Id.* at 11.

[4] *Id.* at 12.

> REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.[5]

The twelfth addendum to the REPC, which was signed by both Parties, set the settlement deadline for September 11, 2015.[6]

At 5:00 p.m. mountain time on September 11, 2015, First American, the title company responsible for the closing, did not have $70,000 in cash that it required from Garteiser in order to close. While Garteiser had wired this money from his Wells Fargo account to First American around lunchtime on September 11th, it is undisputed that First American did not receive these funds until Monday, September 14th.[7]

Also, at 5:00 p.m. mountain time on September 11, 2015, First American did not have an updated HUD statement signed by ACC. First American instead had only a HUD statement that ACC had signed on September 3, 2015 in anticipation of a previous settlement deadline of September 8, 2015. In deposition testimony, a First American representative said that First American had all of the documents that it required from ACC in order to close.[8] Representatives from First American also testified that it was standard practice to allow verbal approval of slight discrepancies in HUD statements, like those present in this case, and that while there was

---

[5] *Id.* at 17.

[6] *Id.* at 34.

[7] Dkt. 19 at 15 (recognizing that "First American received $70,000 of that amount on 7:55 am on Monday, September 14, 2014").

[8] Dkt. 31-1 at 20 (Deposition Nanette Quinn, at 57 ("Q: Did you need anything else from the seller from 4 Aspen Creek Crossing on September 11th, or could you have proceeded to close, just from the seller's side and not from the buyer? A: We had everything from the seller.")).

nothing in the file to confirm this, they were certain First American must have received such approval from ACC by the September 11th closing date.[9]

On September 15, 2015, ACC provided Garteiser a Seller's Notice of Cancellation of Real Estate Purchase Contract.[10] The Notice stated that ACC was providing notice of cancellation of the REPC based on "REPC Section 17.1(a) – Buyer Default."[11] Garteiser subsequently filed this lawsuit seeking specific performance from ACC under the REPC.[12] The day after filing his Complaint, Garteiser filed with the Summit County Recorder a Notice of Pendency of Action, a lis pendens, on the property pursuant to Utah Code Section 78B-6-1303.[13]

**ANALYSIS**

ACC asks the court to order the release of the lis pendens that Garteiser filed on its property in Park City, Utah and to award costs and fees related to its Motion. Utah Code Section 78B-6-1304 provides that any time after a notice of lis pendens has been recorded, a party to the action may make a motion to the court to release the notice. The statute states that "[a] court shall order a notice released if: (a) the court receives a motion to release . . . ; and (b) the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim that is the subject of the notice."[14] Here, the court must decide if Garteiser has shown "by a preponderance of the evidence the probable validity" of his claim against ACC for specific performance of the REPC, either under his theory that he fully

---

[9] *See* Dkt. 31-1 at 11–12 (Deposition Nanette Quinn, at 44–45).

[10] Dkt. 15 at 36.

[11] *Id.* at 36.

[12] Dkt. 2.

[13] *See* Dkt. 3.

[14] UTAH CODE § 78B-6-1304.

performed, or under his theory that ACC also breached the REPC and was therefore not entitled to cancel the contract.

Assessing the probable validity of Garteiser's claim requires the court to interpret the REPC. "When interpreting a contract, [the] task is to ascertain the parties' intent. And the best indication of the parties' intent is the ordinary meaning of the contract's terms."[15] When interpreting a contract, the court "consider[s] each contract provision . . . in relation to all the others, with a view towards giving effect to all and ignoring none."[16] Further, "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[17] Established contract interpretation principles also dictate that when the parties agree that time is of the essence, as they have done in this case, "a delay in performance beyond the specified time will constitute a breach, entitling the other party to declare the contract at an end."[18] With these principles in mind, the court now considers whether Garteiser has met his burden of showing either that he is due specific performance because he performed under the contract, or that he is due specific performance because ACC breached the contract.

**I. Garteiser's Performance Under the REPC**

In its Motion, ACC argues that Garteiser breached the REPC when he failed to deliver the documents and cash required under the settlement provision by 5 p.m. on the September 11th

---

[15] *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 367 P.3d 994, 1001 (Utah 2016).

[16] *Utah Transit Auth. v. Greyhound Lines, Inc.*, 355 P.3d 947, 959 (Utah 2015).

[17] *Mind & Motion*, 367 P.3d at 1001 (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 19, 54 P.3d 1139).

[18] 14 WILLISTON ON CONTRACTS § 43:7 (4th ed.); *see Roberts v. Braffett*, 92 P. 789, 794 (Utah 1907) (noting that when it is clear that the parties intend that time is of the essence then "performance at the time is essential; any default will defeat the right to specific performance"); *see generally Griffeth v. Zumbrennen*, 577 P.2d 129 (Utah 1978) (allowing the seller to rescind the sale of a property when time was of the essence and the buyer failed to provide valid tender by the specified deadline).

deadline, which was to be strictly enforced under the contract's time is of the essence provision. The settlement provision, Section 3.1 of the REPC, states that settlement shall occur only when "any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any Permanent Loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office."[19] This provision also requires that "[s]ettlement shall take place no later than the settlement deadline." The Parties agree that the final settlement deadline was September 11, 2015. The REPC's time is of the essence provision mandates that performance under Section 3.1 "shall absolutely be required by 5:00 PM Mountain Time on the stated date."[20]

There appears to be some dispute about the amount of cash Garteiser was required to bring to closing, and about whether his delivery of signed documents to a courier service could be considered delivery to First American. But Garteiser does not dispute that $70,000 in cash that he was required to deliver was not received by First American, the escrow/closing office, until 7:55 a.m. on Monday, September 14th. ACC argues that this was a material breach of the REPC given the time is of the essence provision, and that this breach entitled it to cancel the contract.

In response, Garteiser contends that he performed under the contract. He argues that "deliver" as used in the settlement provision of the REPC does not mean "receive" and that in order to "deliver" the required cash and documents he needed only to relinquish his control over

---

[19] Dkt. 15 at 12.

[20] *Id.* at 17.

them.[21] Garteiser cites Black's Law Dictionary's definition of deliver[22] and case law concerning the delivery of deeds for support of his argument that he "merely had to put in place all events necessary on his end to deliver the monies and documents to First American before the Settlement Deadline and not that the monies and documents actually had to be received by First American at that time."[23]

This argument is unavailing under the plain language of the REPC. There is no indication in the contract that the Parties intended "deliver" in the settlement provision to carry any specialized meaning, such as the meaning it may have in the context of delivery of a deed. The court thus looks to the plain meaning of "deliver." The American Heritage Dictionary defines "deliver" as "to bring or transport to the proper place or recipient."[24] Under the plain meaning, Garteiser was required to bring the documents and cash to First American by the September 11th deadline.

Also, Garteiser's proposed construction of "deliver" cannot be harmonized with the REPC's time is of the essence provision and the requirement that the closing on the property occur within four days of the settlement deadline. The time is of the essence provision states that "performance . . . shall *absolutely* be required by 5:00 PM Mountain Time on the stated date."[25] Under Garteiser's interpretation he would need only to "put in place all events necessary on his end to deliver" the required documents and cash by the deadline, and First American need not have actually received anything by the deadline. This construction is inconsistent with the

---

[21] Dkt. 19 at 18–22.

[22] *Id.* at 18 ("According to Black's Law Dictionary, the word deliver means 'the giving or yielding of possession or control of something to another.'").

[23] *Id.* at 20.

[24] AMERICAN HERITAGE DICTIONARY 494 (3d ed. 1996).

[25] Dkt. 15 at 17 (emphasis added).

clearly expressed intent of the Parties that performance is absolutely due by a specific date and time, and the deadline for closing is quickly approaching.

A simple hypothetical demonstrates why Garteiser's proposed construction of "deliver" cannot have been the one contemplated by the Parties. Suppose Garteiser initiated a wire transfer that was to arrive by the settlement deadline—thus "delivering" the money under his interpretation—but the transferring bank held the wire transfer for five days before sending the funds. In this hypothetical, First American would not have received the money in time for closing, yet Garteiser still would have satisfied the "time is of the essence" settlement deadline. This could not have been the Parties' intent.

In sum, the plain unambiguous language of the contract required the Parties to have delivered, and for First American to have received, all of the documents and monies required by Section 3.1's settlement provision no later than 5:00 p.m. on September 11, 2015. Because First American, at a minimum, had not received $70,000 of the funds that Garteiser was required to deliver by the 5:00 p.m. deadline, Garteiser breached the REPC. ACC justifiably exercised its right to cancel the contract.

## II. ACC Performance Under the REPC

Having concluded that Garteiser has not shown by a preponderance of the evidence the probable validity of his claim that he performed under the REPC, the court now turns to his claim that ACC breached the REPC and therefore was not entitled to cancel the contract. Garteiser argues in his opposition to ACC's Motion that "[e]ven if Garteiser failed to comply with the REPC . . . ACC was not entitled to declare default and terminate the REPC because ACC had not fully performed by that time."[26] He argues that because ACC had not

---

[26] Dkt. 19.

signed a final HUD statement, but instead had signed a September 3, 2015 HUD statement that was intended for an earlier contemplated September 8, 2015 settlement deadline, that ACC had not "signed and delivered . . . all documents required by the REPC, the Lender, by the title insurance and escrow/closing offices, by written escrow instructions, or by applicable law" as required under Section 3.1.

Garteiser has not shown that ACC's failure to sign an updated HUD statement was a breach of the REPC. In their depositions, representatives from First American who were overseeing the settlement and closing on the property stated that First American had at the settlement deadline all of the documents required from ACC.[27] They also stated that when minor discrepancies in HUD statements arise, as was the case here, it was First American's standard practice to obtain verbal approval for these minor changes and to settle the difference with a personal check.[28] Nanette Quinn, an Escrow Assistant with First American stated that, while there was nothing on file indicating that ACC had made such a verbal approval, "to the best of [her] knowledge, [she] received a phone call in correspondence approving the settlement statement."[29] Based on this testimony, it appears that First American had all of the documents it required from ACC for settlement. While Garteiser argues that it is standard practice to get an updated HUD statement signed, he has not satisfied his burden to establish by a preponderance of the evidence that ACC failed to sign and deliver "all documents required by the REPC, the

---

[27] Dkt. 31-1 at 20 (Deposition Nanette Quinn, at 57 ("Q: Did you need anything else from the seller from 4 Aspen Creek Crossing on September 11th, or could you have proceeded to close, just from the seller's side and not from the buyer? A: We had everything from the seller.")).

[28] *See* Dkt. 29-5 at 22 (Deposition Marie McClelland, at 29 ("He approved it, I believe, verbally, and that is common."); Dkt. 29-4 at 35–36 (Deposition Carol Agle, at 39–40 ("A lot of times, the title company, if it is hundreds of dollars on this, will settle with the personal check between the principals rather than chase everybody down again."); Dkt. 31-1 at 6–8 (Deposition Nanette Quinn, at 39–41).

[29] Dkt. 31-1 at 11–12 (Deposition Nanette Quinn, at 44–45).

Lender, by the title insurance and escrow/closing offices, by written escrow instructions, or by applicable law" as required by Section 3.1.[30]

**III. Attorney Fees and Costs**

ACC argues that it is entitled under Utah Code Section 78B-6-1304(6) to an award of attorney fees and costs for bringing this Motion. This Section provides that

> (6) A court shall award costs and attorney fees to a prevailing party on any motion under this section unless the court finds that:
>
> (a) the nonprevailing party acted with substantial justification; or
>
> (b) other circumstances make the imposition of attorney fees and costs unjust.

Here, the court concludes that while Garteiser has failed to prove by a preponderance of the evidence the probable validity of his claims, he acted with substantial justification in filing the underlying action and the lis pendens. The court also declines to award attorney fees under Section 18 of the REPC at this time, as this Memorandum Decision and Order is not a final disposition of the litigation.

---

[30] The court also rejects Garteiser's argument that equity requires specific performance of the contract. He argues that requiring him to forfeit the property "would be so grossly excessive in relation to any realistic view of loss that might have been contemplated by the parties, that it would so shock the conscience that a court of equity would refuse to enforce such a forfeiture." (Dkt. 19 at 23–24 (quoting *Jensen v. Nielsen*, 485 P.2d 673, 674 (Utah 1971)).) The court does not believe that enforcement of the contract as outlined above is outside the contemplation of the parties or that it is a shock to the conscience. Indeed, "unless enforcement of [the contract] would be unconscionable, we should recognize and honor the right of persons to contract freely and make real and genuine mistakes when dealing at arms' length." *UTA v. Greyhound Lines, Inc.*, 355 P.3d 947, 956 (Utah 2015).

**CONCLUSION**

ACC's Motion to Remove Lis Pendens is GRANTED in part and DENIED in part. (Dkt. 15.) The court concludes that Garteiser has failed to prove by a preponderance of the evidence the probable validity of his claim for specific performance under the REPC. Therefore, the court GRANTS ACC's Motion and orders the release of the les pendens on the subject property. The court, however, DENIES ACC's request for attorney fees and costs associated with this Motion.

**SO ORDERED** this 16th day of June, 2016.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge